IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Candice P. Warren, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 23 C 1199 |
| | ) |
| Millennium Hotels & Resorts d/b/a Millennium Knickerbocker Chicago, | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

Candice Warren worked for defendant Millennium Hotels & Resorts from 2017 through 2019, and again beginning in April 2021. During her more recent stint, she alleges she endured racial discrimination, a hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, and that defendant interfered with her rights and retaliated against her in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendant moves to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is denied.

I.

I accept the facts alleged in the first amended complaint ("FAC"), ECF 12, as true for purposes of this motion. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 349 (7th Cir. 2022) (citation omitted).[1] Plaintiff, who is African American, worked for defendant as a Front Office Manager from April 2021 until her constructive termination. In June 2021, plaintiff applied for FMLA leave to help settle a foster child, but was denied. She applied once more for FMLA leave in August 2021--this time because one of her children had fallen ill--but was denied again. Plaintiff inquired about the denials and was referred to the third party that "handled FMLA approvals," who informed plaintiff that she had been eligible for leave since June. FAC ¶ 22. With this information, plaintiff applied again for FMLA leave, which this time was "begrudgingly approved." *Id.* ¶ 23. Plaintiff alleges that non-African American employees were treated differently than she was when applying for leave and that she was harassed about her leave when she finally obtained it.

Also in June 2021, plaintiff and other African American employees began receiving "racially charged derogatory comments"

---

[1] Plaintiff mistakenly recites the "no set of facts" standard for Rule 12(b)(6) motions that controlled under *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). That standard has been replaced by the plausibility standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which is the standard I apply here.

2

from the white Director of Engineering. *Id.* ¶ 16. Discriminatory conduct came from others, too. In September 2021, plaintiff hired three employees--two African American women and one white man--to work under her at the front desk. The two African American women were "subjected to different standards and treatment" than the white man. *Id.* ¶ 25. On one occasion, plaintiff's supervisor stated that plaintiff was making her white male subordinate her "slave" and that the supervisor needed to "represent the Caucasian men." *Id.* ¶ 26. In another incident, plaintiff overheard a manager stating that he hoped to catch plaintiff with a key so he could fire her.

Plaintiff reported the discrimination to Human Resources in December 2021, but the harassment continued. At some unspecified point, "[d]ue to the constant harassment and disparate treatment [p]laintiff was facing at her job, [p]laintiff was constructively terminated." *Id.* ¶ 31. She filed a Charge of Discrimination with the Equal Employment Opportunity Commission on January 17, 2022, ECF 12-1, and received her right-to-sue letter one year later, on January 17, 2023, ECF 12-2.

II.

To allege race discrimination under Title VII, a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [her race]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th

3

Cir. 2013) (citation and internal quotation marks omitted). The same goes for plaintiff's § 1981 claim. *See Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical, so we merge our discussion of the two claims." (citation omitted)). Defendant contends that plaintiff has not alleged an adverse employment action to sustain her race discrimination claims in Counts I or II because, in its view, it is not enough to simply allege constructive termination without alleging that plaintiff resigned. Indeed, defendant asserts that plaintiff is still employed by defendant--something plaintiff disputes in her response brief. But at the pleading stage, plaintiff's allegation that she was constructively terminated is sufficient for me to draw the reasonable inference that she in fact resigned, even if there is not an explicit allegation saying so.

Defendant also argues that the FAC does not contain facts supporting the abhorrent work environment required to show constructive termination. It is true that demonstrating constructive termination requires an employee to "show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002) (citation omitted); *see also Ulrey v. Reichhart*, 941 F.3d 255, 262 (7th Cir. 2019) ("A constructive discharge can result from a

4

hostile work environment only if the environment is 'even more egregious than that needed for a hostile work environment [claim].'" (quoting *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010))). The Seventh Circuit has cautioned, however, that even where conditions alleged in a complaint "may not ultimately qualify as intolerable," all that is required to plead a constructive discharge claim is, at most, the identification of the situation, allegation of unlawful motivation, and specific examples of poor treatment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). Plaintiff clears that threshold. *See* FAC ¶ 16 (racially charged derogatory comments from white Director of Engineering); *id.* ¶ 26 (supervisor commenting that plaintiff made her white male subordinate his "slave" and that the supervisor needed to represent white men); *id.* ¶¶ 17, 18, 25, 28 (alleging African American employees, including plaintiff, were subjected to derogatory harassment and treated differently than white coworkers).

Defendant next takes aim at plaintiff's hostile work environment claim. Defendant's first argument as to this claim--that the FAC lacks sufficient allegations to establish that any harassment was severe or pervasive--fails because, as discussed, constructive termination requires conditions even more unbearable than what is required for a hostile work environment claim. Having concluded that plaintiff sufficiently alleges constructive

5

termination, I must necessarily conclude that she alleges severe and pervasive harassment. The FAC also overcomes defendant's argument that plaintiff fails to allege harassment based on plaintiff's race. Plaintiff specifically alleges that her supervisor commented plaintiff was making her white male subordinate her "slave," and that he needed to "represent the Caucasian men," *id.* ¶ 26, comments which, at the very least, have "racial . . . overtones." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999). Together with the more general allegations that plaintiff received racially charged comments from her supervisor and the white Director of Engineering, plaintiff sufficiently pleads race-based harassment.

Plaintiff's Title VII retaliation claim survives, too. To state that claim, she "must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity." *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 536 (7th Cir. 2016) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). She is not required to plead a causal link between the protected activity and the adverse action. *Luevano*, 722 F.3d at 1029. Plaintiff alleges that she reported the racial discrimination she believed she was experiencing to Human Resources; that counts as statutorily protected activity. *See*

6

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (observing that an internal complaint to an employer qualifies as statutorily protected activity so long as it indicates the discrimination occurred because of some protected class). And she allegedly suffered an adverse employment action when she was constructively terminated. That would dissuade a reasonable employee from complaining about discrimination, which is the standard for an adverse action in a retaliation claim. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook County*, 804 F.3d 826, 833 (7th Cir. 2015) ("In the retaliation context, 'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." (citation omitted)).

Because plaintiff sufficiently alleges an adverse action for Title VII retaliation purposes, she has also done so for FMLA retaliation purposes. *See Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022) (observing that FMLA retaliation claims are analyzed using the same framework as Title VII retaliation claims and that "[c]onstructive discharge is one form of FMLA retaliation" (citations omitted)). It is immaterial at this stage that plaintiff alleges the same adverse action--constructive termination--for several different claims, since a plaintiff is not required to know exactly what caused an adverse employment action prior to discovery. Whether it was racial discrimination, retaliation for

7

her complaints of that discrimination, retaliation for her FMLA leave requests, a combination of these, or something else is a matter better left to later stages of litigation.

That leaves the FMLA interference claim. To maintain that claim, plaintiff must demonstrate defendant violated 29 U.S.C. § 2615(a)(1), by showing: (1) she was eligible for FMLA protections; (2) defendant was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of intent to take FMLA leave; and (5) defendant denied or otherwise interfered with FMLA benefits to which she was entitled. *Ziccarelli*, 35 F.4th at 1084-85. Additionally, once "a plaintiff shows a violation of § 2615(a)(1), winning relief requires the plaintiff to show 'prejudice,' meaning harm resulting from the violation." *Id.* (citations omitted). Defendant argues only that plaintiff has not alleged prejudice.

I disagree. For example, plaintiff alleges that she "lost time and the ability to settle a foster child and care for one of her sick children" because of the denials of her initial leave requests. FAC ¶ 67. That lost time and ability could plausibly give rise to prejudice in at least two ways. First, the allegation suggests that she would have structured her leave differently had her requests been approved--namely, by taking leave in June and August instead of later. *See Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020) (holding that a plaintiff shows

8

prejudice if she shows "that [she] would have structured [her] leave differently" absent the violation (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002)). Second, plaintiff may be able to show that the "lost time and ability" led to monetary losses. *See* 29 U.S.C. § 2617(a)(1)(A)(i)(II) (allowing for recovery of "actual monetary losses" sustained "as a direct result of the violation, such as the cost of providing care"). Plaintiff might opt to pursue other theories of prejudice. The point is that, at this stage, she has alleged the violation "damaged" her, FAC ¶ 66, and there is enough in the FAC for me to infer that she was prejudiced by wrongful denial of leave, even if she ultimately obtained that leave. *See Zedov v. Mr. Bult's Inc.*, 612 F. Supp. 3d 812, 817 (N.D. Ill. 2020) ("[T]he fact that [plaintiff] was ultimately approved for FMLA does not absolve [defendant] from liability for alleged interference with [plaintiff's] attempts to obtain FMLA leave [previously].").

### III.

For the foregoing reasons, defendant's motion to dismiss is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 14, 2023

10